18 Wis.2d 67 (1962)
KREYER, Appellant,
v.
FARMERS' CO-OPERATIVE LUMBER COMPANY, Respondent.
Supreme Court of Wisconsin.
October 5, 1962.
October 30, 1962.
*73 For the appellant there were briefs by Whelan, Morey & Morey of Mondovi, and oral argument by Randall E. Morey.
For the respondent there was a brief by Wilcox & Sullivan of Eau Claire, and oral argument by Arthur B. Sullivan.
WILKIE, J.
The issues involved on this appeal are:
(1) Did the plaintiff present to the trial court evidence raising a jury issue?
(2) Was the plaintiff prejudiced by error of the trial court in refusing to allow the plaintiff to proceed with his hypothetical question of his expert, Mr. William Sherman?
(3) Was the plaintiff prejudiced by an error of the trial court in allowing testimony of defendant's expert, Mr. Philip Ruehl, over the objection of the plaintiff?
(1) Did the plaintiff present to the trial court evidence raising a jury issue? The trial judge was convinced that this was a case of an unexplained fire. We concur. From the facts recited above it was clear that the trial judge was justified in finding no evidence that would raise a jury question on the claim that the negligence of defendant's workmen actually caused the fire. The well-stated and full opinion of the trial court, dictated from the bench at the time he granted defendant's motion for a directed verdict, is as follows:
"The court will grant the motion. The court does not feel that there is any proof of negligence on the part of Mr. Lovely or his helper. There is absolutely no evidence in the case to tie up their actions or the work that they did, with the fire. It is undisputed that the work which Mr. Lovely did was done in a workmanlike manner and according to the requirements of the code. There is some testimony that other wiring which had been there before did not comply with the code as the code existed at the time of the fire, but it is only a general statement that it does not *74 comply with the code. There is no testimony which indicates what would happen from these wires. There is nothing to indicate they would get hot; that they could produce any short circuits; or produce anything which could cause a fire. There is only a statement that there may have been some wiring which didn't comply with the code. But a mere statement that it doesn't comply with the code does not furnish any proof at all that that condition caused the fire, or could have caused the fire. Disregarding the testimony of the expert called by the defense as to his conclusions as to whether or not the fire could have startedeven disregarding that entirely, there is no testimony at all that there were any conditions in or around the fuse box which could have caused a fire. There is nothing to show that those conditions would have produced any heated wires; that they could have probably caused any heat or anything of that sort. The only testimony is that if there was too much load that the fuses would have blown. If the fuses blew, of course, the wire would instantly become dead. The fuses were intact after the fireall of the fuses, indicating that there was not too much current in the wires. There is testimony in the record that there were flames and sparks coming from the tractor. Whether the witness is in error as to the location of the exhaust does not disprove the statement that there were sparks and flames going into the air. The plaintiff has not attempted in any way to produce any testimony to the contrary. Therefore it stands admitted that there were. Whether that caused the fire I cannot speculate. The court does not feel that there is any evidence at all sufficient to justify the conclusion that the condition of the wiring caused the fire and it would be pure speculation on the part of the jury to attempt to determine the fact."
(2) Was the plaintiff prejudiced by error of the trial court in refusing to allow the plaintiff to proceed with his hypothetical question of his expert, Mr. William Sherman? This leads to a consideration of appellant's main contention that the court committed prejudicial error in refusing plaintiff's counsel the right to proceed with the hypothetical questioning of his expert, Mr. Sherman. The witness was *75 called by the plaintiff and it was conceded that he was a qualified electrician. He went to the farm on June 27, 1960, "to determine in my own mind how the barns burned down." In the course of his testimony his counsel asked him a hypothetical question of more than 600 words. This question assumed facts which the plaintiff contended were in evidence, and at the conclusion of the question, Mr. Sherman was asked, "Do you have an opinion to a reasonable certainty from an electrician's point of view, as to the cause of the firedo you have an opinion?" Counsel for the defense objected to the question for four reasons: "As being improper hypothetical question invading province of jury, assumes facts not in evidence, not sufficient foundation and witness not a fire expert." The trial court sustained the objection on the grounds, "as invading province of jury and lack of foundation."
Trial courts have wide discretion as to admitting opinion evidence of expert witnesses. Anderson v. Eggert (1940), 234 Wis. 348, 291 N. W. 365; Henthorn v. M. G. C. Corp. (1957), 1 Wis. (2d) 180, 83 N. W. (2d) 759.
The principal rule on whether or not expert opinion evidence should be received is stated in the Anderson Case, supra, where the court held, at page 361:
"Whether the testimony was properly received in this case depends upon whether members of the jury having that knowledge and general experience common to every member of the community would be aided in a consideration of the issues by the testimony offered and received."[1]
In the instant case there is no question but what the witness was asked to give his expert opinion on an ultimate fact to be determined by the jury, to wit: Was the barn *76 fire caused by faulty wiring (presumably that installed by the defendant)? We find no Wisconsin authority that holds this to be an unwarranted invasion of the province of the jury. In Maitland v. Gilbert Paper Co. (1897), 97 Wis. 476, 484, 72 N. W. 1124, 65 Am. St. Rep. 137, an expert was asked to give an opinion on an ultimate fact and the court, in a decision written by Mr. Justice MARSHALL, held:
"Where evidentiary facts, upon which the fact in issue depends, are in dispute, opinion evidence as to the ultimate fact must be given upon a hypothetical case. Luning v. State, 2 Pin. 215; Wright v. Hardy, 22 Wis. 348; Kreuziger v. C. & N. W. R. Co. 73 Wis. 158. The rule is that experts are not to decide issues of fact, hence all questions calling for opinion evidence must be so framed as not to pass upon the credibility of any other evidence in the case, else it will usurp the province of the jury or the court. Jones, Ev. sec. 374, and cases cited."
In other words, the rule is that an expert may give an opinion on an issue of ultimate fact but only on a hypothetical question. This is precisely what plaintiff attempted to do here. In Daly v. Milwaukee (1899), 103 Wis. 588, 590, 79 N. W. 752, the court declared that it was "well settled . . . that `the opinions of witnesses, which do relate to matters of science, art, or skill in some particular calling . . . are admissible in evidence.'" And further: "Of course, such opinions must be based upon proper questions; but they are not objectionable merely because they cover one of the ultimate facts to be determined by the jury."[2]
*77 We conclude that the objection to the hypothetical question on the ground that "it invaded the province of the jury" was not well taken and that the trial court erred in sustaining the objection on that ground, although as is indicated later we hold that the trial judge properly sustained the objection on the ground that there was lack of foundation. The subject of the electrical wiring in the barn and its role in connection with the fire is one which was beyond the common knowledge of the jury and concerning which the jury obviously would be enlightened by expert testimony.
Was the hypothetical question properly objected to on the further grounds that the question "assumes facts not in evidence?"
Wisconsin courts have long approved the use of hypothetical questions. Crouse v. Chicago & N. W. R. Co. (1899), 102 Wis. 196, 78 N. W. 446, 78 N. W. 778. The purpose of a hypothetical question is to give the jury the benefit of an expert opinion upon one or another of several situations which may be found to exist in the evidence. The key point in a hypothetical question is the facts that are assumed and form the premises. If these facts fail in any important particular then necessarily the answer or conclusion that assumes the facts must fail.
A hypothetical question need not assume as proved all facts which the evidence in the case tends to prove, but only those which tend to be proved and on the basis of which a *78 correct answer is sought. Sullivan v. Minneapolis, St. P. & S. S. M. R. Co. (1918), 167 Wis. 518, 167 N. W. 311.[3]
In the instant case respondent on this appeal contends that certain vital facts were omitted from the hypothetical question. It also argues that some facts were included that were not proven by the evidence. In any event, counsel did not specifically identify these objections when the question was asked in the trial court and Wisconsin law requires him to be specific on these objections. Davey v. Janesville (1901), 111 Wis. 628, 633, 87 N. W. 813; Kliegel v. Aitken (1896), 94 Wis. 432, 436, 69 N. W. 67; Selleck v. Janesville (1898), 100 Wis. 157, 163, 75 N. W. 975; Allen v. Voje (1902), 114 Wis. 1, 9, 89 N. W. 924.
*79 The three facts omitted from the question according to the respondent are:
(1) The presence of the tractor that was spouting sparks and flames near the barn just prior to the outbreak of the fire; (2) the fact that no fuses blew out; (3) the absence of any assumption of fact as to the presence of secondary fuses.
The facts included in the question which respondent's counsel did not feel that the evidence warranted were:
(1) There were two one and one-half horsepower motors on 60-amp lines (counsel contends the evidence established secondary fuses on each line); (2) no check was made by the electrician of the condition of the wires, fuses, conductors, motors, or entrance cables (counsel contends the evidence established that Mr. Lovely did examine the fuse box, did observe the general wiring layout, did investigate the wires leading to the fuse box, and did examine and replace the lugs).
It is undisputed that counsel did not particularize these objections in the trial court and the record shows that even though all counsel and the trial judge retired to chambers to discuss the objections and the question, respondent's counsel did not come forward at that time with any of these detailed objections.
We conclude that the respondent's objection to the question on the general ground that it "assumes facts not in evidence" was not specific enough to be sustained.[4]Cornell v. State (1899), 104 Wis. 527, 534, 80 N. W. 745, is directly in point. Here the court overruled an objection to a hypothetical question stating, at page 534:
*80 "The prosecuting attorney addressed to a medical witness a hypothetical question consisting of about 600 words, in which are cursorily narrated circumstances, conduct, and appearance of the accused, which had been testified to by one or another witness. This question was objected to generally, as not based on the evidence. No specification was made of any defect in this respect, and none is made in this court. The court below must have been, as we are, wholly at a loss to know whether defendant's counsel claims that there are elements of the question not supported by the evidence, or that material facts established by the evidence are omitted. Under such circumstances we cannot say that any error of which the defendant could have the right to avail himself has been committed. It is unworthy of counsel, owing a duty of fairness and aid to the courts, to urge either an objection or an error such as this. The trial court cannot be expected on the spur of the moment to correctly analyze and test the details of an extended hypothetical question, covering as it did, and as they so often do, the entire field of the evidence in the case. Nor should we be expected to search through some hundreds of pages of manuscript for omissions or mistakes which counsel declines to indicate specifically. It is the duty of counsel to point out wherein such a question is improper, and he should not be permitted to make of such an objection an unfair trap for the trial judge, to be availed of after the evidence is written out and brought to this court for review."
Respondent's third ground for objecting to the hypothetical question was that Sherman, although an "electrical expert," was not a "fire expert." This was a matter left to the discretion of the trial court and we are satisfied he did not abuse his discretion in refusing to sustain this ground for the objection. Potter v. Schleck (1960), 9 Wis. (2d) 12, 100 N. W. (2d) 559. In the end the expert qualifications of Sherman were a matter for cross-examination and would go to the weight to be accorded his expert testimony rather than to his competency as a witness.
The fourth reason for objecting to the question was counsel's assertion that there was "lack of foundation." *81 The trial court was correct in sustaining this ground for the objection. At the time Sherman was called to testify there had been only the testimony of Mr. Lovely, Mr. Gray, and the direct examination only of Werner Kreyer. There was nothing in the record to indicate where the fire actually started or that it started anywhere near the fuse box, or because of any faulty wires. Testimony to the effect that after the fire it was observed that there had been some burning of the haymow floor in the northeast corner above the fuse box and that the 12×12 timber, through which an entrance cable passed, was burned, was introduced long after this witness took the stand and therefore could not be considered in any way as part of a proper foundation for the question.
There was no evidence to show that the wires were hot or that they were strung up incorrectly and there was no groundwork laid whatsoever for any inference even that the wiring must have had something to do with the fire. There was contrary evidence to the effect that the fire had started at the other end of the barn and that there was a three-hour interval between the end of the electrical work and the out-break of the fire. In ruling on a hypothetical question or on any other expert testimony, the trial court must be in a position to insist upon a proper foundation being laid before it allows the question to be answered. The entire premise here as stated by plaintiff's counsel was devoid of any assumption as to evidence pointing to the electrical system as the cause for the fire so that the conclusion called for would be pure speculation and conjecture.[5] There was lack of foundation, as the trial court determined.
(3) Was the plaintiff prejudiced by an error of the trial court in allowing testimony of defendant's expert, Mr. *82 Philip Ruehl, over the objection of the plaintiff? Appellant contends here that the trial court was in error in permitting the expert of the defendant, Philip Ruehl, to testify where such testimony at least in part was based on his reading of some adverse examinations which were not actually made a part of the record. It is not necessary to consider this objection here since the trial court correctly ruled that even disregarding the testimony of that expert the plaintiff's cause must fail. The court stated as follows:
"Disregarding the testimony of the expert called by the defense as to his conclusions as to whether or not the fire could have startedeven disregarding that entirely, there is no testimony at all that there were any conditions in or around the fuse box which could have caused a fire. There is nothing to show that those conditions would have produced any heated wires; that they could have probably caused any heat or anything of that sort. The only testimony is that if there was too much load the fuses would have blown. If the fuses blew, of course, the wire would instantly become dead. The fuses were intact after the fire all of the fuses, indicating that there was not too much current in the wires."
By the Court.Judgment affirmed and order denying plaintiff's motion for new trial also affirmed.
NOTES
[1] See also 7 Wigmore, Evidence (3d ed.), p. 7, sec. 1917, wherein Wigmore states that the true test should be whether additional light could be thrown upon the question by a person of skill in that particular subject. See also 20 Am. Jur., Evidence, p. 654, sec. 782.
[2] In Zarnik v. C. Reiss Coal Co. (1907), 133 Wis. 290, 301, 113 N. W. 752, the court expanded the area for expert testimony by stating: "The scope of expert evidence is not restricted to matters of science, art, or skill, but extends to any subject in respect to which one may derive by experience special and peculiar knowledge. Hamann v. Milwaukee B. Co., supra [127 Wis. 550, 106 N. W. 1081]. `Opinion evidence may properly be given as to the very point the jury are to decide,' when such point is within the field of expert evidence, when the questions are based upon undisputed facts or assumed facts warranted by the record. Maitland v. Gilbert P. Co. [1897], 97 Wis. 476, 72 N. W. 1124; Lyon v. Grand Rapids [1904], 121 Wis. 609, 99 N. W. 311."
[3] In the Sullivan Case, supra, the court, at page 524, stated: "A party has the right to the opinion of an expert witness on the facts of the case as he claims them to be, and he may propound hypothetical questions assuming as proved all facts which the evidence in the case tends to prove." In Estate of Scherrer (1943), 242 Wis. 211, 7 N. W. (2d) 848, the court stated at page 223: "It is fundamental that a hypothetical question to a witness must include all the facts necessary to be considered in arriving at a correct answer." See also Hoffman v. Regling (1935), 217 Wis. 66, 71, 258 N. W. 347.

But in each of the cases the court's ruling as to all the facts necessary to be considered in arriving at a correct answer did not mean all facts in evidence in the case but only those needed to allow the expert to provide a correct answer on the theory advocated by the questioner's side of the case. Applying these rulings to the instant case it was not fatal to omit defendant's evidence about the presence of the "fire-breathing tractor," all that was necessary was for the plaintiff to include all the facts forming the basis for his theory of how the fire started.
Other authorities in support of the proposition that a party has a right to an opinion of an expert witness on the facts which he claims to be the facts of the case: Quinn v. Higgins (1885), 63 Wis. 664, 24 N. W. 482; Zoldoske v. State (1892), 82 Wis. 580, 52 N. W. 778; Oborn v. State (1910), 143 Wis. 249, 126 N. W. 737; Friedman v. Insurance Co. of North America (1958), 4 Wis. (2d) 641, 91 N. W. (2d) 328; Smith v. Atco Co. (1959), 6 Wis. (2d) 371, 94 N. W. (2d) 697.
[4] Objections to a hypothetical question on the grounds that unproved facts are assumed or proven facts are omitted should be precise and specific. See 6 Am. Jur., Proof of Facts, pp. 173, 174, Hypothetical Questions, Proof 1.
[5] McGaw v. Wassmann (1953), 263 Wis. 486, 57 N. W. (2d) 920, 58 N. W. (2d) 663; McCormick, Evidence (hornbook series), pp. 29-32, sec. 14; 32 C. J. S., Evidence, pp. 220, 221, sec. 522; 2 Jones, Evidence, Civil Cases (4th ed.), p. 694, sec. 371.